IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEONARD BADENHORST,<br><br>               Plaintiff,<br><br>v.<br><br>LATOYA HUGHES,<br>DANIEL MONTI,<br>WEXFORD HEALTH SOURCES INC.,<br>CHRISTINE VINEYARD,<br>JOHN and JANE DOES, *members of the Psychiatry Board*,<br>JANE DOE 1,<br>DR. BEDNARZ, and<br>TERRY SHULTY,[1]<br><br>               Defendants. | Case No. 25-cv-00382-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff Leonard Badenhorst,[2] an inmate of the Illinois Department of Corrections who is currently incarcerated at Centralia Correctional Center (Centralia), brings this civil action for violations of constitutional rights pursuant to 42 U.S.C. § 1983, unlawful conspiracy under 42 U.S.C. §1985 and Illinois tort law, and violations of the Americans with Disabilities Act. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

---

[1] Based on a review of the Complaint, the "Psychiatry Board" and "John/Jane Doe 2" are not two separate defendants. (*See* Doc. 1, p. 1, 3). The Clerk of Court is **DIRECTED** to correct the docket by removing "John/Jane Doe 2" as a defendant and renaming "The Psychiatry Board" as "John and Jane Does, members of the Psychiatry Board."

[2] Plaintiff identifies herself as a transgender female, who goes by the name Samantha. (Doc. 5, p. 1).

## THE COMPLAINT[3]

Plaintiff states that she has autism spectrum disorder (ASD), which causes behavioral issues and difficulties communicating and engaging in social interactions. (Doc. 1, p. 15). She alleges that on July 10, 2024, she saw Dr. Bednarz, a board-certified psychiatrist employed by Wexford Health Services Inc. (Wexford), for reported and observed ASD symptoms. (*Id.* at p. 10). Dr. Bednarz informed Plaintiff that he had met with the Psychiatry Board and "everyone agreed that they would not offer screening or diagnosis for autism spectrum disorder at all." (*Id.*). Plaintiff asserts that this policy was created by Dr. Bednarz and the Psychiatry Board because Wexford, the Illinois Department of Corrections (IDOC), and Warden Monti "deemed" the diagnosis of ASD "undesirable," after another inmate, named Wachter, was diagnosed with autism in 2020 and then denied further testing and services. (*Id.* at p. 11). Plaintiff alleges that the policy to not screen or diagnosis ASD has resulted in the denial of medical treatment and needed services required under the American with Disabilities Act (ADA). (*Id.* at p. 11, 12).

On July 9, 2024, the day before her appointment with Dr. Bednarz, Plaintiff wrote a grievance in which she grieved that she was being denied screening and diagnostic testing for ASD, as well as services under the ADA. (Doc. 1, p. 19). In response, the ADA Coordinator wrote the following:

> Individual Badenhorst was seen by psychiatrist Dr. Bednarz on 7/10/24 in which she discussed [her request to be screened for Autism and to be provided with all ADA accommodations and services]. Dr. Bednarz did not provide a diagnosis or rule out diagnosis of Autism. Individual Badenhorst does not identify what accommodation she is seeking. Per AD 04.01.111 ADA Accommodations [an] individual may submit a written request to the ADA coordinator identifying what accommodation they are requesting. Per individual in custody orientation manual: Requests for an accommodation shall be made in writing on the "Individuals in Custody Request" form (DOC 0286) and directed to the Facility ADA Coordinator. If you have limited writing or language skills, you may request assistance from your

---

[3] The Court notes that Plaintiff's handwriting is difficult to read and at some points illegible.

> counselor in completing the Request form. When completing an individual in custody Request for an ADA accommodation, identify:
>
> 1. The program, activity, or service being offered by your facility,
> 2. How your disability limits your ability to use the service, activity, or program in the same way that other individuals in custody would be able use it, and
> 3. What assistance you would like your facility to give you that will help you overcome your limitations and make it possible for you to use the service, activity, or program.
>
> The Department will determine whether an accommodation is appropriate on a case-by-case basis.

(*Id.* at p. 22). Plaintiff argues that AD 04.01.111 and the orientation manual have a "specific discriminatory effect on [her] due to neurological disabilities in figuring out what accommodations would be useful, available and necessary." (*Id.* at p. 9). She argues that having a counselor to assist in completing the request form is not helpful since the counselor does not have training or education in "accommodations and needs for neurological and communications disabilities associated with [ASD]." (*Id.*). Plaintiff believes that AD 04.01.111 and the orientation manual are in conflict with the ADA and RA by limiting the ADA coordinator's ability to act on his or her own initiative. (*Id.* at p. 9, 16). She states that AD 04.01.111 and the orientation manual limit a person with neurological disabilities from receiving ADA services. (*Id.* at p. 9).

Plaintiff claims that her untreated ASD has resulted in physical injury. She states that her ASD causes high anxiety, and she experiences "high pressure social engagements." (Doc. 1, p. 12). Because of these symptoms she was repeatedly pressured into unwanted sexual encounters with another inmate. She "wanted help to stop" these encounters and spoke to Sergeant Higgins about her situation. Sergeant Higgins told Plaintiff that "there is nothing I can do, [you] will have to call PREA from the dayroom phones." (*Id.*). Plaintiff had to refuse housing to "get away" from the inmate. (*Id.*).

**PRELIMINARY DISMISSALS**

Because Sergeant Higgins is not named as a defendant in the case caption, all claims Plaintiff is intending to bring against him, including claims regarding failure to protect Plaintiff from another inmate, are dismissed. *See Myles v. United States,* 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

**DISCUSSION**

Based on Plaintiff's allegations and the articulation of her claims, the Court designates the following counts:

**Count 1:** ADA/RA [4] claim against Director Latoya Hughes for denying Plaintiff services for autism spectrum disorder.

**Count 2:** Eighth Amendment deliberate indifference claim against Monti, Wexford, Vineyard, John and Jane Does (members of the Psychiatry Board), Mental Health Authority Jane Doe 1, Bednarz, and Shulty for denying Plaintiff screening, diagnosis, and treatment for autism spectrum disorder.

**Count 3:** Section 1985(3) conspiracy claim against Monti and Vineyard.

**Count 4:** Illinois civil conspiracy claim against Monti and Vineyard.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[5] pleading standard.**

**Count 1**

Under the ADA, "no qualified individual with a disability shall, because of that

---

[4] Plaintiff does not mention the Rehabilitation Act (RA), 29 U.S.C. § 794(a), in the Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a pro se prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has asserted a claim under the latter statute. *See Norfleet v. Walker,* 684 F.3d 688, 690 (7th Cir. 2012).

[5] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

disability…be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and the RA is the same, except that the RA includes as an additional requirement the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 685 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). Discrimination under both includes the failure to accommodate a disability. *Jaros*, 684 F.3d at 672 (citation omitted).

Plaintiff seems to be arguing that she is effectively being discriminated against and denied accommodation under the ADA and RA because AD 04.01.111 and the orientation manual require her to identify the accommodation and/or the type of assistance requested and other details concerning how her disability is limiting her ability to participate in or use certain programs, activities, or services at Centralia before receiving any type of accommodation. Because of her neurological condition, however, she cannot meet these requirements, and she is unable to articulate what proper accommodations should be afforded to her. Plaintiff believes that having a counselor assist her to fill out the request form is in opposite with the ADA and RA because a counselor is not trained in neurological disorders and needs. Thus, the procedures in place at Centralia are barring her ability to obtain accommodations.

Plaintiff has sufficiently pled that she suffers from a disability, ASD, and she qualifies to receive the benefits of a public service, program, or activity. However, she does not articulate how she was excluded from or denied access to "a program or activity because of [her] disability." *Jaros,* 684 F. 3d at 672. While Plaintiff does not necessarily need to identify a particular accommodation she is seeking in the Complaint, *see Brown v. Meisner,* 81 F. 4th 706, 709 (7th Cir. 2023), she has pleaded facts that defeat her claim. Nothing in the Complaint allows the

inference that she has been directly or effectively denied accommodation. Plaintiff does not argue that she is unable to meet and work with a counselor in order to fill out a formal accommodation request and collaborate on possible assistance options due to her ASD, rather she disagrees with the process on its face because she believes counselors do not have proper training. Nothing in the ADA, however, requires the ADA coordinator or other staff to receive special training on any specific form of disability, medical condition, or accommodation. The purpose of an ADA coordinator is to "coordinate" ADA compliance. 28 C.F.R. §35.107. Plaintiff may not like the process in place, but Plaintiff does not allege that she has utilized or attempted to utilize the available procedures at Centralia and then been denied accommodations or access to any program or activity because of her disability. Accordingly, Count 1 is dismissed without prejudice.

**Count 2**

To state a claim for deliberate indifference, an inmate must put forward facts implicating both an "objective and subjective element, namely that: (1) an objectively serious medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." See *Chapman v. Keltner*, 241 F.3d 842, 845 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Id.* (citing *Salazar v. City of Chi.*, 940 F. 2d 233, 238 (7th Cir. 1991)). And finally, because Plaintiff is bringing her Eighth Amendment claim for damages under Section 1983, she must plead that Defendants were individually involved in the alleged constitutional deprivation. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017)

Plaintiff claims that the policy not to screen or diagnose ASD was created by Dr. Bednarz and the unknown members of the Psychiatry Board and affirmed by Wexford, IDOC, and Warden

Monti. (Doc. 1, p. 10-11). Because of this policy, she has been denied screening, diagnoses, and treatment for ASD. She sues Warden Monti, Health Care Unit Administrator Vineyard, John and Jane Does who are members of the Psychiatry Board, Mental Health Authority Jane Doe 1, Dr. Bednarz, and ADA Coordinator Shulty in their individual capacities. She also sues Warden Monti, Health Care Unit Administrator Vineyard, Mental Health Authority Jane Doe 1, and ADA Coordinator Shulty in their official capacities. The Court will address the individual capacity claims first.

Count 2 will proceed against Dr. Bednarz, who was involved in establishing the policy not to screen and diagnose ASD and more specifically, refused to screen, diagnose, and treat Plaintiff's ASD.

Count 2 will also proceed against John and Jane Does, members of the Psychiatry Board, Wexford, and Warden Monti. Although it is not exactly clear the extent of each Defendant's involvement in implementing the policy not to screen and diagnose ASD, at this point Plaintiff has sufficiently pled that these Defendants, who appear to be upper-level officials, were at least on notice of the policy and that the policy was resulting in a negative impact on inmates', including Plaintiff's, medical care. *See e.g. Maya v. Wexford Health Sources, Inc.*, No. 17-cv-00546-NJR, 2020 WL 5517465, at *13 (S.D. Ill. Sept. 14, 2020) (citations omitted); *Williams v. Wexford Health Sources, Inc.*, No. 17-cv-05076, 2020 WL 2767579, at *6 (N.D. Ill. May 28, 2020). *See also Gonzalez v. Feinerman*, 663 F. 3d 311 (7th Cir. 2011).

Count 2 will be dismissed as to Health Care Unit Administrator Vineyard, Mental Health Authority Jane Doe 1, and ADA Coordinator Terry Shulty. Plaintiff states that these Defendants "failed to inquire into essential facts that are necessary to make a professional judgment and interference with medical judgment by factors unrelated to prisoner's medical needs." (Doc. 1, p. 11). It appears she is arguing liability based on the fact that they went along with the policy to not

screen, diagnosis, or treat ASD. Plaintiff does not, however, describe any actual conduct on the part of these Defendants that amounts to deliberate indifference. She does not assert that they were personally involved in Plaintiff's medical care decisions, and they can only be "responsible for their own misdeeds." *Burks v. Raemisch,* 555 F. 3d 592, 594 (7th Cir. 2009). Furthermore, they cannot be held liable simply because they ruled against Plaintiff on an administrative complaint. *See George v. Smith,* 507 F. 3d 605, 609 (7th Cir. 2007). The Court also notes that because Plaintiff appears to have been receiving ongoing treatment by psychiatrists, (Doc. 1, p. 21-22), Defendants were "entitled to rely on the judgment" of her treating physician. *See Rasho v. Elyea,* 856 F. 3d 469, 478 (7th Cir. 2017). For these reasons, Count 2 is dismissed as to Vineyard, Jane Doe 1, and Shulty.

As stated, Plaintiff sues Monti, Vineyard, Jane Doe 1, and Shulty in their official capacities. "An official capacity suit is essentially one against the government entity of which the defendant is an official." *Hadi v. Horn,* 830 F. 2d 779, 783 (7th Cir. 1987). The Eleventh Amendment bars official capacity claims for monetary damages. *See Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012). Any claim for monetary damages against Defendants in their official capacities is therefore dismissed. Plaintiff can, however, pursue injunctive relief. She has sufficiently alleged that she suffered a constitutional violation due to a policy and will be able to proceed with her official capacity claim against Warden Monti in his official capacity. Because suing Vineyard, Jane Doe 1, and Shulty would be redundant, the official capacity claims against these Defendants are dismissed.

**Counts 3 and 4**

Plaintiff states that she is bringing conspiracy claims against Warden Monti and Health Care Administrator Vineyard under 42 U.S.C. §1985(3) and Illinois tort law. She states that Monti conspired "with the lawful objective of [self-aggrandizement] for promotion by unlawfully

depriving the Plaintiff of protections, medical treatment, ADA services and subjecting her to physical injury." (Doc. 1, p. 12). Vineyard then agreed to further Mont's objective by "[e]nsuring the denial of and [interference] with the screening, diagnosis, and any …subsequent ADA services, protections, and treatments of autism spectrum disorder for the Plaintiff by ACC subordinate staff." (*Id.*). Both claims are dismissed.

"[T]he function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with state actors.'" *Turley v. Rednour*, 729 F.3d 645, 649 n. 2 (7th Cir. 2013) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). *See also Dobbey v. Jeffreys,* 417 F. Supp. 3d 1103, 1111 (N.D. Ill. 2019). Here, Plaintiff's conspiracy claim is asserted against government employees and so the claim brought under Section 1985 is "superfluous" and only adds "needless complexity." *Fairley,* 578 F. 3d at 526. Accordingly, Plaintiff's Section 1985(3) conspiracy claim is dismissed.

For a civil conspiracy claim, Illinois law requires a plaintiff to demonstrate: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). But Plaintiff's allegations are conclusory and threadbare. Plaintiff does not provide any factual support to allow the plausible inference of an agreement between Monti and Vineyard. Thus, she has failed to state claim for conspiracy, and Count 4 is dismissed.

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff has filed a motion for a preliminary injunction and/or temporary restraining order (TRO). (Doc. 5). In the motion, Plaintiff seeks a court order instructing Defendants to

accommodate her ASD under the ADA by housing her in a single cell during the pendency of this litigation. Plaintiff asserts that her ASD causes difficulty communicating with staff and other inmates resulting in frustration and "devastating consequences." She states that she had been housed in a single cell, but another inmate was transferred to her cell on January 22, 2025. Plaintiff claims that since receiving a cellmate, she has suffered "devastating psychological consequences in critical interactions," and she has refused housing more than once to ensure her safety. Plaintiff states that she has "a high degree of need for routine and is incredibly disrupted with this repeated refusing of housing severely aggravates the Plaintiff's resistance to change." Without a single cell accommodation, Plaintiff contends that she will experience psychological injury and severely decreased functioning.

An emergency injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain a preliminary injunction or a TRO, the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted.

The Court has found that Plaintiff has failed to state a claim under the ADA/RA and dismissed that claim in its entirety, which makes it impossible for her to prove that she is likely to

succeed on the merits of the claim. Accordingly, the motion for a preliminary injunction and/or TRO regarding ADA accommodations is **DENIED.** (Doc. 5).

### MOTION TO CORRECT PLAINTIFF'S IDOC NUMBER

The motion is **DENIED as moot.** The docket accurately records Plaintiff's IDOC number as #M16573.

### UNIDENTIFIED DEFENDANTS

Plaintiff will be allowed to proceed with Count 2 against John and Jane Does (members of the Psychiatry Board), but these defendants must be identified by first and last names before service of the Complaint can be made on them. Plaintiff will have the opportunity to engage in limited discovery to ascertain their identities. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Warden Monti, in his official capacity, will be directed to respond to discovery aimed at identifying the unknown defendants. Once Defendant Monti has entered an appearance, the Court will provide further instructions and deadlines for identifying the remaining John Does. Plaintiff is advised that it is ultimately her responsibility to identify the John Does.

### DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** against Latoya Hughes is **DIMISSED**. **COUNT 2** will proceed against Wexford and Bednarz, John and Jane Does (members of the Psychiatry Board), and Monti in their individual capacities. **COUNT 2** will also proceed against Monti in his official capacity. All other official capacity claims are dismissed. **COUNT 3** against Monti and Vineyard is **DISMISSED.** Because there are no surviving claims against Hughes, Vineyard, Jane Doe 1, and Shulty, the Clerk of Court **SHALL TERMINATE** these individuals as parties on the docket. The Clerk shall also update the docket in accordance with footnote 1.

The Motion for a Preliminary Injunction and/or Temporary Restraining Order is **DENIED**.

(Doc. 5). The Motion to Correct Prison ID Number is **DENIED as moot**. (Doc. 7).

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Monti, Wexford, Bednarz, and John and Jane Does (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the Defendants need only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than 14

days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 22, 2025**

                                                  *s/Stephen P. McGlynn*
                                                **STEPHEN P. MCGLYNN**
                                                **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.